IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| DARRELL FAIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 10 C 7710 |
| | ) | |
| MARCUS HARDY, Warden, | ) | |
| Stateville Correctional Center, | ) | The Honorable |
| | ) | Suzanne B. Conlon, |
| Respondent. | ) | Judge Presiding. |

## <u>ANSWER</u>

Respondent MARCUS HARDY, by his attorney, LISA MADIGAN, Attorney

General of Illinois, answers the above-captioned petition for a writ of habeas corpus

and, in compliance with Rule 5 of the Rules Governing Section 2254 Cases in the

United States District Courts, states as follows:

1.     Petitioner Darrell Fair — identified as prisoner number B32994 — is in

the custody of Marcus Hardy, warden of the Stateville Correctional Center.

2.     Following a jury trial in the Circuit Court of Cook County, Illinois,

petitioner was convicted of first degree murder and sentenced to a term of fifty

years of imprisonment.  Exh. A, Rule 23 Order, *People v. Fair*, No. 1-03-0983

(Ill.App. Sept. 17, 2003) at 1.  The evidence at trial showed that on the night of the

murder, petitioner, Chris Thomas, and Lamont Reeves robbed William Lee Jones

and Chris Stubblefield at gunpoint. Exh. A at 2. During the course of the robbery, Reeves shot and killed Stubblefield with a gun provided by petitioner. *Id.*

3.     Petitioner appealed his judgment of conviction to the Illinois Appellate Court, First District, raising two issues: (1) the trial court erred by admitting into evidence petitioner's statement to police into evidence because the statement was prepared by a prosecutor and was not signed by petitioner; and (2) petitioner's sentence was excessive. Exh. A at 1; Exh. B, Def. Br., *People v. Fair*, No. 1-03-0983 at 2. The appellate court affirmed the judgment of conviction on September 17, 2004. Exh. A at 1, 16.

4.     Petitioner filed a petition for leave to appeal (PLA) that the Illinois Supreme Court denied on January 26, 2005. Exh. E, PLA, *People v. Fair*, No. 99591; Exh. F, Order denying PLA, *People v. Fair*, No. 99591. Petitioner denies having filed a petition for a writ of certiorari in the United States Supreme Court (Pet. at 2), and a review of that Court's docket confirms that he did not do so.

5.     On July 28, 2005, petitioner filed in the Circuit Court of Cook County a pro se postconviction petition pursuant to the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1, *et seq*.), arguing that (1) his trial counsel was ineffective for withdrawing a motion to suppress petitioner's statements to police and evidence related to his arrest; and (2) his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. Exh. G, Rule 23 Order, *People v. Fair*, No. 1-05-3259 (Ill.App. May 18, 2007) at 2; Exh. K, Rule 23 Order, *People v.*

*Fair*, No. 1-05-3259 (Ill.App. Apr. 16, 2010) at 1-2.[1]  The trial court summarily

dismissed the petition.  Exh. K at 2.

6.      Petitioner appealed the dismissal of his postconviction petition, and

the state appellate court affirmed on May 18, 2007.  Exh. G at 1.

7.      Petitioner filed a PLA that the Illinois Supreme Court denied on

September 30, 2009.  Exh. L, PLA, *People v. Fair*, No. 104796; Exh. M, Order

denying PLA, *People v. Fair*, No. 104796.  Petitioner then moved for reconsideration

of the denial of his PLA.  Exh. N, Motion for reconsideration, *People v. Fair*, No.

104796.  The Supreme Court allowed the motion and remanded the case to the state

appellate court with instructions to vacate and reconsider its judgment in light of

*People v. Hodges*, 912 N.E.2d 1204 (Ill. 2009).  Exh. O, Order allowing motion for

reconsideration, *People v. Fair*, No. 104796.

8.      Following remand, the state appellate court affirmed the trial court's

summary denial of petitioner's postconviction petition.  Exh. K at 1.  Petitioner filed

a second postconviction PLA that the Illinois Supreme Court denied on September

29, 2010.  Exh. P, PLA, *People v. Fair*, No. 110556; Exh. Q, Order denying PLA,

*People v. Fair*, No. 110556.

9.      Petitioner filed his federal habeas petition on December 3, 2010,

raising ten claims:

---

[1]  The state appellate court issued two Rule 23 orders in *People v. Fair*, No. 1-
05-3259.  The second, found at Exhibit K, was issued after the Illinois Supreme
Court remanded the case to the appellate court to reconsider the judgment in light
of *People v. Hodges*, 912 N.E.2d 1204 (Ill. 2009).  *See* Exh. K at 1.

| | |
|---|---|
| Claim One: | the police used coercion and physical abuse in response to petitioner's refusal to speak with police and prosecutors; |
| Claim Two: | the trial court erred by admitting into evidence petitioner's statement to police and prosecutors because it was taken in violation of *Miranda*; |
| Claim Three: | petitioner's statement to police and prosecutors was inadmissible because police ignored petitioner's repeated requests for counsel; |
| Claim Four: | petitioner was denied food, sleep, and medical treatment while in police custody; |
| Claim Five: | petitioner's trial counsel was ineffective for not moving to suppress petitioner's statements to police; |
| Claim Six: | the trial court erred by admitting petitioner's written statement to police; |
| Claim Seven: | petitioner's trial counsel was ineffective because he did not move to quash petitioner's arrest; |
| Claim Eight: | the state appellate court failed to comply with the Illinois Supreme Court's supervisory order to re-examine petitioner's postconviction appeal in light of *People v. Hodges*, 912 N.E.2d 1204 (Ill. 2009); |
| Claim Nine: | the state appellate court applied the wrong standard for evaluating a summary dismissal of a postconviction petition; and |
| Claim Ten: | petitioner's sentence was excessive. |

Pet. at 5-11.

10.     Claims One, Two, Three, Four, Six, and Seven are procedurally

defaulted, and no claim in the instant petition is barred by a failure to exhaust

state remedies, non-retroactivity, or the statute of limitations. Respondent has electronically filed the following exhibits as exhibits to this Answer:

Exhibit A: Rule 23 Order, *People v. Fair*, No. 1-03-0983 (Ill.App. Sept. 17, 2003);

Exhibit B: Def. Br., *People v. Fair*, No. 1-03-0983;

Exhibit C: State Br., *People v. Fair*, No. 1-03-0983;

Exhibit D: Def. Reply Br., *People v. Fair*, No. 1-03-0983;

Exhibit E: PLA, *People v. Fair*, No. 99591;

Exhibit F: Order denying PLA, *People v. Fair*, No. 99591;

Exhibit G: Rule 23 Order, *People v. Fair*, No. 1-05-3259 (Ill.App. May 18, 2007);

Exhibit H: Def. Br., *People v. Fair*, No. 1-05-3259;

Exhibit I: State Br., *People v. Fair*, No. 1-05-3259;

Exhibit J: Def. Reply Br., *People v. Fair*, No. 1-05-3259;

Exhibit K: Rule 23 Order, *People v. Fair*, No. 1-05-3259 (Ill.App. Apr. 16, 2010);

Exhibit L: PLA, *People v. Fair*, No. 104796;

Exhibit M: Order denying PLA, *People v. Fair*, No. 104796;

Exhibit N: Motion for reconsideration*, People v. Fair*, No. 104796;

Exhibit O: Order allowing motion for reconsideration, *People v. Fair*, No. 104796;

Exhibit P: PLA, *People v. Fair*, No. 110556;

Exhibit Q: Order denying PLA, *People v. Fair*, No. 110556;

Exhibit R:    Motion to suppress, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.);

Exhibit S:    Transcript of suppression hearing, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.);

Exhibit T:    Postconviction petition, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.);

Exhibit U:    Order denying postconviction petition, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.);

Exhibit V:    Common Law Record, *People v. Fair*, No. 1-05-3259 (ten volumes); and

Exhibit W:    Report of Proceedings, *People v. Fair*, No. 1-05-3259 (six volumes).

11.    Petitioner does not challenge the statement of facts set forth in the state appellate court's opinion on direct appeal (*People v. Fair*, No. 1-03-0983, (Ill.App. May 18, 2007)).  This Court's review of those facts is deferential; a determination of a factual issue made by a state court is presumed to be correct for purposes of federal collateral review.  *See* 28 U.S.C. § 2254(e)(1); *Mack v. McCann*, 530 F.3d 523, 525 (7th Cir. 2008).  Petitioner has the burden of rebutting this presumption by clear and convincing evidence (§ 2254(e)(1); *Mack*, 530 F.3d at 525), and he has not done so.  The facts developed at petitioner's trial were summarized by the state appellate court as follows:

> William Lee Jones testified that on the evening of July 21, 1998, he was with the victim Chris Stubblefield.  They drove to the Anywhere But Out lounge located at 104th Street and Michigan Avenue in Chicago and parked.  Jones observed a white Camaro parked on the side of the street.  As the victim and Jones passed by the Camaro, codefendant [Reeves], one of the occupants of the

vehicle, said, "excuse me, players." Jones and the victim turned around, and codefendant [Reeves] "stuck" a gun on Jones' forehead. Jones nudged the victim to walk away because the victim had a bad leg. Codefendant [Reeves] then "snatched" a chain off of Jones' neck. When the victim began to walk away, codefendant [Reeves] came up behind him. Codefendant [Reeves] then removed money from the victim's pockets, spun the victim around and shot him in the back.

Christopher Hill testified that he was outside the Anywhere But Out lounge on the night in question and saw codefendant [Reeves] exit a white Camaro. Hill also saw two other individuals remain inside the white Camaro. Hill witnessed codefendant [Reeves] shoot Stubblefield in the back. Hill and Jones testified that codefendant [Reeves] then entered the white Camaro on the passenger side, and the driver sped away. Hill positively identified codefendant [Reeves] in a lineup as the shooter. Hill was in "federal custody" when he testified and had three prior convictions.

Nicole Murray testified that she was standing outside the lounge with her friend, Renee, when [petitioner] tried to sell them some liquor. [Footnote omitted]. Murray did not know [petitioner]. Renee started to talk to [petitioner], and Murray turned her back to [petitioner] to speak to someone. While her back was turned she did not see where [petitioner] was or what he was doing. Then someone yelled "they got a gun and everybody start[ed] screaming and *** running, shots started going off."

Detective Maverick Porter testified that he investigated the murder with his partner Detective Alvin Brown. The detectives spoke to Hill, who led them to codefendant [Reeves]. The detectives then located codefendant [Reeves] and learned of [petitioner's] involvement. After [petitioner] was apprehended, Detectives Porter and Brown interviewed [petitioner], who agreed to answer the detectives' questions. [Petitioner] told the detectives that on the night in question he was looking for someone to rob with codefendant [Reeves] and Thomas. [Petitioner] had a gun, which was placed under the hood of his car to prevent the police from finding it if they were stopped. [Petitioner] allowed Thomas to drive his car because he did not have a driver's license. Thomas drove to a bar located at 104th

Street and Michigan in Chicago because they knew some "high rollers" were going to be there. [Petitioner] stated that he was sitting in his car with codefendant [Reeves] and Thomas when he observed Jones and the victim exit the car. Detective Porter stated that [petitioner] next told him that he popped the hood of his car, but then [petitioner] changed his story and said Thomas popped the hood. [Petitioner] then stated that codefendant [Reeves] removed the gun, approached Jones and snatched the chain off his neck. As codefendant [Reeves] turned to the victim, the victim fled. Codefendant [Reeves] went after the victim, removed the victim's money, and then shot him in the back. Codefendant [Reeves] returned to [petitioner's] car and told [petitioner], "let's go." Detective Porter stated that he did not take notes during [petitioner's] interview, but he later summarized what [petitioner] had told him in a supplementary report.

Detective Porter further testified that after he interviewed [petitioner], ASA Adrian Mebane spoke with petitioner and wrote down [petitioner's] statement. Detective Porter was present when [petitioner's] statement was taken. The ASA contemporaneously summarized what [petitioner] told him. The ASA never asked Detective Porter to initial the statement. Detective Porter testified that in the six years he has been a detective, this was the only case in which he could recall not initialing the changes made in a handwritten statement.

The ASA testified that he spoke to [petitioner] with Detectives Porter and Brown present. [Petitioner] indicated that he understood his constitutional rights and was willing to talk to the ASA. After [petitioner] spoke with the ASA about the murder for approximately 40 minutes, the ASA asked [petitioner] if he wanted the statement kept in oral form, reduced to a handwritten statement or transcribed by a court reporter. [Petitioner] stated that "a handwritten statement would be fine." The detectives then left the room, and the ASA asked [petitioner] how he was treated by the police. [Petitioner] stated that he was treated well, given food, and there were no threats or promises made in exchange for his statement. The ASA stated that Detective Porter then returned, and the ASA began writing [petitioner's] statement "directly" as he told it. [Petitioner] and the ASA reviewed the statement together as it was being written and at the end. The ASA stated that while he

was writing down [petitioner's] statement he crossed out several lines at [petitioner's] direction, but [petitioner] refused to initial the changes. [Petitioner] told the ASA that he did not want to sign anything without an attorney. [Petitioner] did not indicate that he did not want to talk to the ASA anymore or that he wanted the ASA to stop taking the statement. Only the ASA signed the statement. The ASA also printed [petitioner's] name where the offender normally would sign his name. The ASA testified that [petitioner's] handwritten statement was "substantially the same" as his oral statement.

The trial court then asked defense counsel if he wanted to cross-examine the ASA before the handwritten statement was published. Defense counsel declined, and the statement was published to the jury. The statement was basically consistent with Detective Porter's testimony. In addition, the statement indicated that [petitioner] obtained the gun used in the murder from his friend Jack. [Footnote omitted]. [Petitioner] stated that Thomas and codefendant [Reeves] went with him to 104th Street and Michigan Avenue where [petitioner] wanted to sell some liquor. While they were parked there, codefendant [Reeves] robbed the victim and shot him in the back. After the shooting, codefendant [Reeves] jumped back in the car, and [petitioner] drove away. [Petitioner] then dropped off Thomas and codefendant [Reeves], drove home, took the gun inside his house, and went to sleep. The next day [petitioner] returned the gun to Jack with a bullet missing. [Petitioner] stated that he made the statement freely and voluntarily.

The ASA then testified that every word in the handwritten statement was told to him by [petitioner]. The ASA stated that the police station where he conducted the interview did not video tape statements. The ASA stated that he did not request an audio player because that option was not available to him.

Exh. A at 3-7.

12. As demonstrated below, petitioner is not entitled to relief on any of his claims.

## ARGUMENT

## I. Petitioner Is Not Entitled To Relief On Any Of His Claims.

Claims One, Two, Three, Four, Six, and Seven are procedurally defaulted.

Claims Eight, Nine, and Ten are non-cognizable on federal habeas review. Claims

Five and Seven are barred by § 2254(d).

### A. The AEDPA Standard

Habeas relief shall not be granted unless the state court's adjudication of a

claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court

of the United States" (28 U.S.C. § 2254(d)(1)), or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding" (28 U.S.C. § 2254(d)(2)). "The question

under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable – a

substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" clearly established federal law "if it

'applies a rule that contradicts the governing law set forth in our cases' or if it

'confronts a set of facts that are materially indistinguishable from a decision of this

Court and nevertheless arrives at a result different from our precedent.'" *Mitchell

v. Esparza,* 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

405-406 (2000)). A state court decision involves "an unreasonable application" of

federal law within the meaning of § 2254(d)(1) where "the state court identifies the

correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (quoting *Williams*, 529 U.S. at 413). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)); *see Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### B. Procedural Default

A federal court is precluded from reaching the merits of a claim in a § 2254 petition if the claim (1) "was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds," or (2) "was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley,* 390 F.3d 505, 514 (7th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 & n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004)).

Regarding the first of these procedural default grounds, a federal court cannot consider a habeas claim if it determines "that 'the state decision rests on a

state procedural ground that is independent of the federal question and adequate to support the judgment.'" *Grigsby v. Cotton*, 456 F.3d 727, 732 (7th Cir. 2006) (quoting *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003)); *see Coleman*, 501 U.S. at 729. The state court's reliance on the state procedural bar must be clear: "[a] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Jefferson v. Welborn*, 222 F.3d 286, 288 (7th Cir. 2000) (quoting *Harris*, 489 U.S. at 263).

To avoid the second kind of procedural default, the petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1014, 1025-26 (7th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *Boerckel*, 526 U.S. at 848).

To provide the state court with the means to review the state prisoner's federal claim, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam); citing *Boerckel*, 526 U.S. at 845). "That means, among other things, articulating

the point in such a way that a judge could grasp both its substance and its foundation in federal law." *Lockheart v. Hulick,* 443 F.3d 927, 929 (7th Cir. 2006) (citing *Reese,* 541 U.S. 27); *Perruquet,* 390 F.3d at 514 (citing *Duncan*, 513 U.S. at 365-66; *Reese*, 541 U.S. at 32). In short, to preserve a claim for federal habeas review, petitioner "must alert the state courts that he is relying on a provision of the federal constitution for relief." *Perruquet*, 390 F.3d at 513-14. The Seventh Circuit has identified four factors in determining whether a habeas petitioner has adequately alerted the state courts to his reliance on a federal constitutional provision: "'(1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.'" *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)); *Verdin v. O'Leary*, 972 F.2d 1467, 1473-1474 (7th Cir. 1992). "[T]he presence of any one of these factors, particularly factors (1) or (2), does not automatically avoid a waiver; the court must consider the specific facts of each case." *Verdin*, 972 F.2d at 1474 (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1393 (7th Cir. 1992)).

Petitioner can excuse his procedural defaults only by showing (1) cause and prejudice; or (2) that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### C.     Claim One Is Procedurally Defaulted.

Claim One — that the police used coercion and physical abuse to overcome petitioner's refusal to speak with police and prosecutors— is procedurally defaulted because petitioner never raised it in any state court proceeding.  On direct appeal, petitioner challenged the admission of his written statement into evidence only on grounds that its admission lacked the proper foundation and his counsel was ineffective for failing to seek its suppression on that basis.  Exh. A at 1; Exh. B at 2. On postconviction appeal, petitioner argued that the trial court erred by summarily dismissing his postconviction petition because he set forth the gist of a constitutional claim that trial counsel was ineffective for failing to file a motion to quash arrest or motion to suppress petitioner's statements on the ground that police coerced him into making a statement (presented in petitioner's habeas petition as Claims Five and Seven).  Exh. G at 1; Exh. H at 2; Exh. K at 1-2.  Although some of the allegations petitioner made to the state appellate court in support of that ineffectiveness claim included the allegations supporting Claim One — that the police coerced petitioner into speaking — petitioner never presented the legal principles relevant to Claim One to the state appellate court, and the claim is defaulted.  *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (claim of ineffective assistance of counsel is a separate constitutional claim from constitutional claims underlying it, and must be fairly presented to state courts as separate constitutional claim before federal courts will conduct habeas review); *see also Malone v. Walls*, 538 F.3d 744, 754-755 (7th Cir. 2008) (claim not identified in

state court as separate constitutional claim for relief not defaulted on federal habeas review where petitioner presented state court with "the operative legal standard for evaluating" it).  Additionally, petitioner's ineffectiveness claims (Claims Five and Seven) do not overcome his default because he has not demonstrated, or even argued, that he is raising those claims as a means to reach the underlying claim presented in Claim One.  *See Malone*, 538 F.3d at 755. Petitioner's pro se postconviction petition did not raise Claim One, *see* Exh. G at 1, and, therefore, he cannot argue that counsel was to blame for his failure to raise it in the state courts.  Because petitioner failed to raise Claim One through one complete round of state court review, it is defaulted.  *Boerckel*, 526 U.S. at 848; *Guest*, 474 F.3d at 930.

Petitioner has argued not argued either of the two exceptions for excusing his defaults, *see Coleman*, 501 U.S. at 750; therefore, this Court should not excuse them.  *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (when petitioner fails to argue any excuse for procedural default of claim, "we cannot consider his claim.").

**D.    Claim Two Is Procedurally Defaulted.**

Claim Two — the trial court erred by admitting petitioner's statement to police and prosecutors because it was taken in violation of *Miranda* — is procedurally defaulted because petitioner did not raise it in any state appellate court.  He did not raise it on his direct appeal to the state appellate court or in the PLA that followed (Exhs. A, B, & E), or in his postconviction appeal or PLA (Exhs.

G, H, K, & L).  Thus, Claim Two is procedurally defaulted.  *Boerckel*, 526 U.S. at 848; *Guest*, 474 F.3d at 930.  Because petitioner has not argued or demonstrated an excuse for his procedural default, this Court should not review his defaulted claim. *Coleman*, 501 U.S. at 750; *Crockett*, 542 F.3d at 1193.

**E.  Claim Three Is Procedurally Defaulted.**

Claim Three — that petitioner's statements to police and prosecutors were inadmissible because police ignored petitioner's repeated requests for counsel — is procedurally defaulted because he did not raise it in any state appellate court.  Like Claims One and Two, petitioner failed to raise Claim Three on direct appeal (Exhs. A & B) or in his postconviction appeal (Exhs. G, H, & K), or in the PLAs that followed those appeals (Exhs. E & L).  Accordingly, Claim Three is procedurally defaulted.  *Boerckel*, 526 U.S. at 848; *Guest*, 474 F.3d at 930.  Because petitioner has not argued or demonstrated an excuse for his procedural default, this Court should not review his defaulted claim.  *Coleman*, 501 U.S. at 750; *Crockett*, 542 F.3d at 1193.

**F.  Claim Four Is Procedurally Defaulted.**

Claim Four — that petitioner was denied food, sleep, and medical treatment — is procedurally defaulted.  As discussed *supra* pp. 13-14 in regard to Claim One, petitioner did not raise in the state courts an independent constitutional claim that the police officers' alleged mistreatment of him during his detainment entitled him to relief.  *See* Exhs. B, E, H, & K.  Thus, although the alleged police misconduct was part of the factual basis of the ineffectiveness claims raised in petitioner's

postconviction appeal and Claims Five and Seven of his federal habeas petition, he did not raise Claim Four through one complete round of state court review, and, therefore, it is procedurally defaulted. *Boerckel*, 526 U.S. at 848; *Guest*, 474 F.3d at 930. Petitioner has not argued or demonstrated an excuse for his procedural default; therefore, this Court should not review his defaulted claim. *Coleman*, 501 U.S. at 750; *Crockett*, 542 F.3d at 1193.

### G. Claim Five Is Meritless.

Claim Five — that petitioner's trial counsel was ineffective for withdrawing his motion to suppress petitioner's statements to police on the basis that they were the result of physical and psychological coercion — is meritless because the state appellate court's decision rejecting it was not contrary to, or an unreasonable application of, clearly established federal law.

### 1. Background

Prior to trial, petitioner's trial counsel filed a motion to suppress evidence of any and all statements made by petitioner to police. Exh. R, Motion to suppress, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.). The motion alleged that prior to being interrogated by police, petitioner was not informed of his right to remain silent and his right to counsel, and that petitioner's statements to police were obtained as the result of physical and psychological coercion. *Id*. Counsel withdrew the motion before any pretrial testimony on the subject, stating: "At this time after consulting with my client we would ask to withdraw [the suppression] motion." Exh. S, Transcript of suppression hearing, *People v. Fair*, No. 98-CR-25742 (Cir. Ct.

Cook Cty.) at N-3. After the trial court confirmed that the defense was withdrawing

the motion, the following exchange occurred between the trial court and petitioner:

> THE COURT: Mr. Fair, do you understand that?
>
> THE DEFENDANT FAIR: Yes, ma'am.
>
> THE COURT: That's your agreement?
>
> THE DEFENDANT FAIR: That's fine.

*Id.* at N-4.

On direct appeal, petitioner argued the legally distinct claim that the trial

court should have excluded his statement to police as memorialized in writing by

the Assistant State's Attorney Mebane because the written statement lacked a

proper foundation under Illinois law. Exh. B at 13. Petitioner argued in the

alternative that if the court determined that the claim was waived, counsel was

ineffective for withdrawing his motion to suppress. Exh. B at 23-24; Exh. D at 8.

The appellate court rejected petitioner's ineffectiveness claim. Exh. A at 13.

In doing so, the court first set forth the familiar *Strickland* standard, observing that

a defendant must establish both that counsel's performance was deficient and the

deficiency prejudiced the defendant. *Id.* at 12 (citing *Strickland v. Washington*, 466

U.S. 668 (1984)). The court then determined that petitioner had not met this

standard because counsel's decision to withdraw the motion was a matter of trial

strategy. *Id.* In reaching this conclusion, the court observed that petitioner had

agreed to the withdrawal of the motion in open court and that counsel had "used the

-18-

handwritten statement, which was not signed by defendant or the detective, as his best means to attack the ASA's credibility." *Id.*

After the Illinois Supreme Court denied petitioner's direct appeal PLA, petitioner filed a postconviction petition in the Circuit Court of Cook County. Exh. T, Postconviction petition, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.). The postconviction petition alleged that petitioner only permitted police to enter his home and arrest him after police made threats, including a threat to shoot petitioner. *Id.* at 6-7 The petition further alleged that, after being detained, petitioner only agreed to give the statement to the police and prosecutors that the Assistant State's Attorney memorialized in writing after petitioner was physically and verbally abused and denied food, medicine, and sleep. *Id.* at 8-11. Based on these allegations, petitioner argued that his trial counsel was ineffective because he failed to (1) investigate petitioner's complaints regarding his treatment while in police custody; (2) litigate the motion to suppress petitioner's statement to police; or (3) file a motion to quash petitioner's arrest. *Id.* at 6.

The Circuit Court of Cook County dismissed petitioner's postconviction petition on the ground that it was frivolous and patently without merit. Exh. U, Order denying postconviction petition, *People v. Fair*, No. 98-CR-25742 (Cir. Ct. Cook Cty.) at 9. Rejecting petitioner's claims that trial counsel was ineffective, the trial court determined, as the appellate court had on direct appeal, that counsel's decision to withdraw the motion was a matter of trial strategy and therefore did not constitute deficient performance. *Id.* at 6. The trial court also found that the

evidence "supports the conclusion that defendant's arrest was lawful." *Id*. Finally, the court determined that the trial court had already rejected petitioner's claim that counsel was ineffective for withdrawing the suppression motion, and, accordingly, the doctrine of *res judicata* barred such a claim in postconviction proceedings. *Id*. at 6-7 (citing *People v. Miller*, 786 N.E.2d 989, 992 (Ill. 2002) (*res judicata* bars claims litigated on direct appeal from consideration in postconviction proceedings)).

On postconviction appeal, petitioner argued that the trial court erred by summarily dismissing his postconviction petition because the petition stated the "gist" of a constitutional claim, requiring the court to advance it to the second stage of postconviction proceedings under Illinois law. Exh. G; Exh. H at 2; Exh. K. In support of his claim, petitioner contended that his postconviction petition had raised two meritorious claims that his trial counsel was ineffective: (1) counsel was ineffective for failing to move to quash petitioner's arrest; and (2) counsel was ineffective for withdrawing the suppression motion. The appellate court rejected the claims, but the Illinois Supreme Court vacated that judgment and remanded the case to the appellate court to reconsider its decision in light of *People v. Hodges*, 912 N.E.2d 1204 (Ill. 2009), which held that, under Illinios's Post-Conviction Hearing Act, a postconviction petition alleging ineffective assistance of counsel may not be summarily dismissed "if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id*. at 1212; Exh. O.

Following remand, the appellate court again rejected petitioner's claims of ineffectiveness.  Exh. K.  Addressing petitioner's claim that counsel was ineffective for withdrawing the suppression motion, the appellate court agreed with the trial court that the doctrine of *res judicata* barred the claim from consideration in postconviction proceedings because petitioner had challenged counsel's decision to withdraw the motion on direct appeal.  Exh. K at 5.

Turning to petitioner's claim that counsel was ineffective for failing to move to quash petitioner's arrest, the appellate court initially set forth the *Strickland* standard for reviewing such claims: "to prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability defendant was prejudiced thereby."  Exh. K at 6 (citing *Strickland*, 466 U.S. at 687-88).

The appellate court then rejected petitioner's motion to quash claim (raised in Claim Seven), concluding that the claim was forfeited (*see infra* at pp. 30-34), and that petitioner failed to establish that he was prejudiced by counsel's performance. Regarding prejudice, the appellate court determined: "Our review of the record indicated that the evidence presented at trial overwhelmingly supported defendant's conviction."  Exh. K at 8.  The court found that even if the motion to quash were successful and "led to the suppression of defendant's inculpatory statement, the remaining evidence presented against defendant was significant and compelling."  Exh. K at 8-10.

## 2. Analysis

Claim Five is meritless.  The record demonstrates that petitioner cannot establish that counsel's decision to withdraw the suppression motion was constitutionally deficient.  Moreover, performance aside, the claim is meritless because the state appellate court's decision that petitioner was not prejudiced by the admission of petitioner's inculpatory statement was not contrary to, or an unreasonable application of, *Strickland*.

### a. Performance

Petitioner cannot establish that his counsel's decision to withdraw the suppression motion raising petitioner's allegations of police misconduct was constitutionally deficient.  To demonstrate constitutionally deficient performance, petitioner must establish that counsel's performance fell below an "objective standard of reasonableness."  *Harding v. Sternes*, 380 F.3d 1034, 1044 (7th Cir. 2004) (citing *Strickland*, 466 U.S. at 680-82). The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Thus, it "must be highly deferential when evaluating an attorney's performance," and "every effort must be 'made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  *Id*. at 1044-45 (quoting *Strickland*, 466 U.S. at 689).  Moreover, "[w]here a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later

form the basis of a claim of ineffective assistance of counsel." *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989) (citing *United States v. Williams*, 631 F.2d 198, 204 (3d Cir.1980) (no ineffective assistance of counsel where defendant ultimately concurred in his trial counsel's tactical decision)).

Here, counsel's performance was not deficient because he made the reasoned decision to withdraw the suppression motion, and did so only after conferring with petitioner. Exh. S at N-3. Moreover, the trial court asked petitioner in open court whether he agreed with counsel's decision to withdraw the motion, and petitioner indicated that he did. *Id*. at N-4. Additionally, as the state appellate court determined on direct review, "defense counsel used the handwritten statement as part of his trial strategy," employing it to "as his best means to attack the ASA's credibility." Exh. A at 13. Thus, the record demonstrates that counsel's withdrawal of the suppression motion was a strategic decision and that it was reasonable. *See Weaver*, 882 F.2d at 1140 (where petitioner is informed of and agrees with counsel's trial strategy, that strategy cannot form basis of ineffective assistance claim).

The record also indicates that counsel reasonably withdrew the suppression motion because it had little chance of success. At trial, the Assistant State's Attorney who recorded petitioner's statement testified that at one point during petitioner's interrogation, the police officers left the room and he asked petitioner how he had been treated by the police. Exh. A at 6. Petitioner answered "that he was treated well, given food, and there were no threats or promises made in exchange for his statement." *Id*. In light of this uncontradicted trial testimony,

petitioner's allegations of police misconduct, by themselves, do not establish that the suppression motion would have been successful, and counsel was not ineffective for deciding not to pursue a motion that had little chance of success. *See United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003) (counsel not obligated to make frivolous arguments and has tactical reason not to make weak arguments to avoid shifting trial court's attention from strong ones); *see Perales v. Fews*, Doc. No. 00 C 5279, 2004 WL 783099, at *7 (N.D. Ill. Jan. 15, 2004) (federal habeas petitioner's "bare allegations" insufficient to warrant evidentiary hearing on ineffective assistance claim).

In sum, petitioner has not — and cannot — overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's decision to withdraw the suppression motion was part of his reasonable trial strategy — counsel used the written statement to attack the ASA's credibility — and petitioner agreed to the decision after counsel conferred with him. Moreover, the record includes trial testimony that contradicts petitioner's bare allegations of coercion, and indicates that the suppression motion had little chance of success. Thus, the appellate court reasonably rejected petitioner's contention that counsel's decision to withdraw the suppression motion rendered his performance constitutionally deficient.

### b.    Prejudice

Claim Five is also meritless because the state appellate court's decision on postconviction appeal applying the prejudice prong of *Strickland* was not contrary to, or an unreasonable application of, that clearly established federal law. § 2254(d)(1).  The state appellate court on postconviction review determined that petitioner could not meet his burden under *Strickland*'s prejudice prong because even absent petitioner's incriminating statement, there was strong evidence of guilt in the record.  True, the state appellate court analyzed the prejudicial effect of petitioner's statement for purposes of rejecting the separate but related claim that counsel was ineffective for failing to move to quash petitioner's arrest, rather than his claim that counsel was ineffective for withdrawing his motion to suppress statements.  Nonetheless, in resolving the motion to quash claim, the court determined that counsel's performance was not prejudicial by analyzing whether exclusion of petitioner's statement — the very same statement challenged in Claim Five — would have altered the outcome of trial.  Because the factual and legal basis for Claim Five — the motion to suppress claim — is virtually indistinguishable from the motion-to-quash claim actually adjudicated by the state appellate court, the constraints of § 2254 should apply.  *See Harrington*, ___ U.S. ___, 131 S.Ct. at 784 (state court decision entitled to § 2254 deference "whether or not the state court reveals which of the elements in a multipart claim it found insufficient"); *Pole v. Randolph*, 570 F.3d 922, 934-935 (7th Cir. 2009) (ineffective assistance claim is a single claim requiring court to assess counsel's performance as a whole).

Before addressing the merits of petitioner's ineffectiveness claim, the state appellate court on postconviction review on remand summarized the factual findings that it had set forth in its initial order disposing of petitioner's postconviction appeal:

> As we summarized in our previous order, "the evidence presented at trial *** included defendant's confession to the crime; testimony of two eyewitnesses who identified defendant's car at the scene of the crime; one eyewitness who placed defendant at the scene of the crime; and a statement by defendant's accomplice to police implicating defendant did not leave reasonable doubt as to defendant's guilt and would not have altered the outcome of the trial." *People v. Fair*, No. 1-05-3259 (May 18, 2007) (unpublished order pursuant to Supreme Court Rule 23).

Exh. K at 2. The court then turned to petitioner's ineffectiveness claim, setting forth the applicable law for reviewing claims under *Strickland*'s prejudice prong, and then rejecting petitioner's claim under that standard:

> Manifestly, ineffectiveness claims can be resolved solely on the prejudice component, without establishing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697 []. Sufficient prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 []; *People v. Erickson*, 183 Ill.2d 213, 224, 700 N.E.2d 1027, 1032 (1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of defendant's trial. *Strickland*, 466 U.S. at 694 [].

> Moreover, defendant has failed to establish the likelihood of success on the motion or, if successful, that the outcome of the trial would have differed. Our review of the record indicates that the evidence presented at trial overwhelmingly supported defendant's conviction. Even if the motion was successful and somehow led to the suppression of defendant's inculpatory

statement, the remaining evidence presented against defendant was significant and compelling.

Simply put, there does not exist a reasonable probability that the outcome of defendant's trial would have differed in the case *sub judice*. As noted, the evidence was significant and, importantly, not meaningfully challenged by defendant where the sufficiency of the evidence was not raised on direct appeal. *Fair*, No. 1-03-0983 (September 17, 2004) (unpublished order pursuant to Supreme Court Rule 23). Consequently, we can equally conclude defendant received constitutionally effective assistance of counsel and was not prejudiced by trial counsel's performance on his behalf. See *Strickland*, 466 U.S. at 697 [].

Exh. K at 8-9.

The appellate court's decision was not contrary to clearly established federal law. The court correctly identified the governing *Strickland* standard, and, consistent with *Strickland*, properly concluded that counsel was not ineffective because petitioner could not demonstrate prejudice in light of the substantial evidence of guilt other than the petitioner's challenged statement. *See Price v. Vincent*, 538 U.S. 634, 640 (2003) (state court decision not contrary to clearly established federal law where state court identified the applicable Supreme Court precedents and affirmed the principles articulated therein); *see also Mitchell*, 540 U.S. at 16 (state court's decision not contrary to federal law so long as reasoning and result do not contradict Supreme Court precedent).

The appellate court also did not unreasonably apply *Strickland*. The appellate court determined that petitioner had not established that suppression of his statement (by means of a motion to quash arrest) would have been likely to lead to a more favorable outcome at trial. The court concluded that the remaining

evidence was significant and compelling, and this conclusion was reasonable in light of the trial testimony it cited: two eyewitnesses identified petitioner's car at the scene of the crime; one eyewitness, Nicole Murray, identified petitioner at the scene of the crime; and petitioner's codefendant gave police a statement "implicating [petitioner]". Exh. K at 2. Again, petitioner has not challenged these factual findings, presumed to be correct for purposes of federal collateral review, and he has therefore not met his burden of rebutting them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Mack*, 530 F.3d at 525. Thus, the appellate court reasonably relied on these findings in concluding that petitioner could not demonstrate a likelihood of success at trial had his statement been suppressed. Accordingly, the state appellate court did not unreasonably apply *Strickland*. *Lockyer*, 538 U.S. at 75 (section 2254 "requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable"); *Williams*, 561 F.3d at 743 (state court's decision on section 2254 review need only be "minimally consistent with the facts and circumstances of the case"); *see Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)) (a state court's application of clearly established federal law is only unreasonable under section 2254 if it lies "'well outside the boundaries of permissible differences of opinion'"); *see also Harrington*, ___ U.S. ___, 131 S.Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.") Moreover, in light of the evidence cited by the state appellate court on postconviction review, and that recounted by the court on direct appeal, Claim Five would fail under *Strickland*'s prejudice prong even without the deference given to state court decisions under section 2254.

### H. Claim Six Should Be Denied Under Rule 2(c) Of The Habeas Rules, Is Non-Cognizable, And Is Procedurally Defaulted.

Claim Six — that the trial court erroneously admitted petitioner's written statement into evidence — should be denied because it does not identify the constitutional claim involved. Alternatively, assuming that the claim is the evidentiary claim raised and rejected on direct appeal, it is non-cognizable on federal habeas review. The claim is also procedurally defaulted because it was rejected on an adequate and independent state forfeiture ground.

### 1. Claim Six Is Barred By Rule 2(c).

Petitioner contends that the trial court erroneously admitted his written statement in violation of his right to a fair trial, but cites no United States Supreme Court holding for this proposition, nor does he explain on what ground the statement's admission violated his constitutional protections. This is insufficient to alert the court and respondent whether petitioner asserts a constitutional claim, and does not comply with Rule 2(c) of the Rules Governing Section 2254 Cases (Habeas Rules). *See* Habeas Rule 4 advisory committee's note (notice pleading is

insufficient; petition must state facts pointing to "real possibility of constitutional error"); *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (Rule 2(c)'s requirement that petition "state the facts supporting each ground" is "more demanding" than notice pleading); *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (Rule 2(c) requires that habeas petitions "meet heightened pleading requirements"); *Mahaffey v. Ramos*, 588 F.3d 1142, 1144-45 (7th Cir. 2009) ("Habeas petitions must . . . state the facts supporting the ground for relief."); *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) ("mere notice pleading is not sufficient in the habeas corpus context"; Rule 2(c) requires that petition set forth facts supporting each ground in petition); *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) ("[T]o substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."); *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987) ("notice pleading is not countenanced in habeas petitions"). Accordingly, the claim should be dismissed on this ground. *See* Habeas Rule 4 (judge must dismiss petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief") & advisory committee's note (judge may "dismiss some allegations" in petition without dismissing entire petition); *McFarland*, 512 U.S. at 856 ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."); *Jackson v. Albany Appeal Bureau Unit*, 442 F.3d

51, 54 (2d Cir. 2006) (habeas petition was "properly dismissed pursuant to Rule 2(c)").

### 2. Claim Six Is Non-Cognizable.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991); 28 U.S.C. § 2254(a). Thus, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet,* 390 F.3d at 511 (citing *Estelle,* 502 U.S. at 67-68).

Assuming that Claim Six raises the same evidentiary claim that he raised on direct appeal, the claim would be non-cognizable because that claim only raised an error of state evidentiary law, contending that the statement was inadmissible because it lacked a proper foundation. Exh. A at 10; Exh. B at 2.

### 3. Claim Six Is Procedurally Defaulted.

Furthermore, petitioner raised his claim regarding the foundation of his statement on direct appeal, *see* Exh. A at 10; Exh. B at 2, but the appellate court rejected it as forfeited because petitioner failed to raise the issue at trial or in a post-trial motion. Exh. A at 10-11. The court further rejected petitioner's contention that, despite the forfeiture, it should review the claim under Illinois's plain error rule. Exh. A at 11-12.

Thus, claim Six is defaulted because the appellate court rejected it on the independent and adequate state law ground of forfeiture. Exh. A at 10-12. Although the appellate court considered whether the claim was reviewable under

Illinois's plain error rule, that analysis does not constitute a merits determination

for purposes of the procedural default doctrine. *Miranda v. Leibach*, 394 F.3d 984,

992 (7th Cir. 2005) (plain error analysis did not cure claim's default because "an

Illinois court does not reach the merits of a claim simply by reviewing it for plain

error"). Because the appellate court unambiguously rejected the claim on this state

forfeiture ground, it is defaulted and should be denied on that basis. *Coleman*, 501

U.S. at 729; *Grigsby*, 456 F.3d at 732; *see Cone v. Bell*, 556 U.S. ___, 129 S. Ct. 1769,

1780 (2009) ("when a petitioner fails to raise his federal claims in compliance with

relevant state procedural rules, the state court's refusal to adjudicate the claim

ordinarily qualifies as an independent and adequate state ground for denying

federal review."); *Kaczmarek v. Rednour*, ___ F.3d ___, Doc. No. 09-2417, 2010 WL

4628671, at *5 (7th Cir. Nov. 17, 2010) (Illinois's forfeiture rule adequate state law

ground for purposes of federal habeas review); *see also Sturgeon v. Chandler*, 552

F.3d 604, 611 (7th Cir. 2009) ("The Illinois Appellate Court's determination that

Sturgeon's ineffective-assistance-of-trial-counsel claim was waived is thus an

adequate and independent state ground, and this claim is unreviewable on federal

habeas").

Because petitioner has not argued or demonstrated an excuse for his

procedural default, this Court should not review his defaulted claim. *Coleman*, 501

U.S. at 750; *Crockett*, 542 F.3d at 1193.

## I.     Claim Seven Is Procedurally Defaulted And Meritless.

Claim Seven — that trial counsel was ineffective for failing to move to quash petitioner's arrest — is procedurally defaulted and meritless.  The claim is defaulted because the state appellate court rejected it on postconviction review as forfeited because it could have been, but was not, raised on direct appeal.  This, as discussed, *see* p. 29, *supra*, is an independent and adequate sate law ground that blocks federal habeas review.  The claim is also meritless because the state appellate court's alternate ground for its decision — rejecting the claim on its merits — was not contrary to, or an unreasonable application of, clearly established federal law.

### a.     Background

Petitioner argued in his postconviction petition that his trial counsel was ineffective for failing to move to quash petitioner's arrest.  The petition alleged that police arrived at petitioner's home and, in an effort to coerce petitioner into opening the door, kicked his door and threatened to shoot him through the door.  Exh. T at 7-8.  When petitioner asked if the police officers had a search warrant, one officer replied that warrants are "done by computer."  *Id*. at 8.  Petitioner eventually opened the door and police arrested him for murder.  *Id*.  Petitioner describes conversations with his defense counsel in which he alleges to have informed counsel of the identity of the murder weapon's owner, but does not detail any conversation with counsel about the circumstances of his arrest.  *Id*. at 19.

The trial court rejected petitioner's postconviction claim, concluding that counsel's decision not to file a motion to quash arrest did not constitute ineffective assistance of counsel because it was a matter of trial strategy and the evidence in the record "supports the conclusion that defendant's arrest was lawful." Exh. U at 6.

The state appellate court affirmed. Exh. K. Initially, the court determined that the claim had been forfeited:

> Importantly, we discern no reason why this claim is not subject to waiver where defendant could have raised it on direct appeal, but failed to do so. It is axiomatic that a claim is waived where it was available for presentment, but not made. See [*People v.*] *Miller*, [786 N.E.2d 989,] 992 [(2002)].

Exh. K at 8.

The court then turned to the merits of the claim. The court first concluded that the decision not to pursue a motion to quash was a matter of defense counsel's trial strategy. Exh. K at 8. Next, as detailed *supra* at pp. 24-28 in regard to Claim Five, the court set forth the applicable law governing *Strickland*'s prejudice prong, and rejected the claim under that standard, determining that petitioner "failed to establish a likelihood of success on the motion," and, even if the motion would have been successful, failed to establish that the outcome of trial would have been different. Exh. K at 8-9. Again, the court referenced the evidence introduced at trial, including the eyewitness identifications of petitioner and his car at the scene, and petitioner's codefendant's statement implicating petitioner in the crimes. Exh. K at 2, 9.

-34-

### b.  Claim Seven Is Procedurally Defaulted.

Claim Seven is procedurally defaulted because the appellate court found it was forfeited, concluding that petitioner could have, but did not, raise it on direct appeal.  Exh. K at 8.  Because the appellate court rejected the claim on this state law procedural ground, the claim cannot entitle petitioner to federal habeas relief.  *Coleman*, 501 U.S. at 729; *Grigsby*, 456 F.3d at 732; *see Cone*, 556 U.S. ___, 129 S. Ct. at 1780 ("when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."); *Kaczmarek*, ___ F.3d ___, 2010 WL 4628671, at *5; *Sturgeon*, 552 F.3d at 611 (claim unreviewable on federal habeas where the state appellate court determined it had been waived).  Because petitioner has not argued or demonstrated an excuse for his procedural default, this Court should not review his defaulted claim.  *Coleman*, 501 U.S. at 750; *Crockett*, 542 F.3d at 1193.

### c.  Claim Seven Is Meritless.

Even if Claim Seven were not procedurally defaulted, it is meritless because the appellate court's adjudication of it is not contrary to, or an unreasonable application of, *Strickland.*

The state appellate court's decision was not contrary to *Strickland* because the court correctly identified the governing *Strickland* standard and concluded that the claim did not warrant relief because counsel's challenged decision was part of his trial strategy and not constitutionally deficient.  Moreover, the state appellate

court reasonably — and consistent with *Strickland* — concluded that petitioner could not demonstrate prejudice because the record included substantial evidence of guilt other than the challenged statement. *See Price*, 538 U.S. at 640 (state court decision not contrary to clearly established federal law where state court identified the applicable Supreme Court precedents and affirmed the principles articulated therein); *see also Mitchell*, 540 U.S. at 16 (state court's decision not contrary to federal law so long as reasoning and result do not contradict Supreme Court precedent).

The state appellate court also did not unreasonably apply *Strickland*. As the court concluded, petitioner cannot establish that defense counsel's performance was deficient because nothing in the record suggests that counsel's decision not to file a motion to quash was unreasonable in light of what counsel knew at the time. Exh. K at 8. The postconviction petition proves this point, as it alleged police misconduct, but did not allege whether or when petitioner informed trial counsel of this misconduct. *Id.* Moreover, as the circuit court found in dismissing petitioner's postconviction petition, the record does not establish a likelihood that petitioner's motion to quash would have succeeded. Exh. U at 6. Petitioner provides no substantiation that his arrest violated the Fourth Amendment. Given that reviewing courts are "highly deferential" when evaluating counsel's performance, *Harding*, 380 F.3d at 1044, petitioner's allegations of police misconduct do not establish that counsel's decision not to pursue a motion to quash rendered his assistance constitutionally defective, particularly in the absence of any

facts showing that counsel even knew of the circumstances regarding the alleged police misconduct in the first place.

The appellate court also reasonably determined that petitioner could not show prejudice from counsel's decision not to pursue a motion to quash. As discussed in the preceding paragraph, there is not a reasonable probability that the motion would have succeeded without additional corroboration for the factual foundation of the claim. Moreover, as discussed in detail *supra* at pp. 24-28 in regard to Claim Five, the court reasonably determined that petitioner could not establish that, had the motion to quash been granted, the result of trial would have been different. Exh. K at 8-9; *see* discussion of Claim Five *supra* at pp. 24-28. Accordingly, Claim Seven is meritless.

### J.     Claims Eight And Nine Are  Non-Cognizable.

Claims Eight and Nine — that the state appellate court failed to comply with the Illinois Supreme Court's supervisory order to re-examine petitioner's postconviction appeal in light of  *People v. Hodges*, 912 N.E.2d 1204 (Ill. 2009) — are non-cognizable on federal habeas review.

These two claims are non-cognizable on federal habeas review because they have no discernable federal constitutional basis. To obtain federal habeas relief, a petitioner must demonstrate that his conviction violated clearly established federal law as determined by the United States Supreme Court. *Taylor*, 529 U.S. at 412; *see Estelle,* 502 U.S. at 68 (federal court on habeas review "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States"). Here, petitioner claims that the appellate court did not follow the state supreme court's order directing it to reconsider its opinion in light of *Hodges*. *See Hodges*, 912 N.E.2d at 1212 (holding that postconviction petition may not be summarily dismissed under Illinois law if "arguable" that (1) counsel's performance deficient and (2) deficiency prejudiced defendant). Petitioner contends that the appellate court's purported omission violated his Fourteenth Amendment due process right, but cites no authority for the proposition. *See also* Exh. P (second postconviction PLA, only setting forth state law grounds for claim). But absent any authority suggesting that a state appellate court's compliance with a state supreme court's supervisory order is a matter of federal constitutional law (and research revealed none), or that, on remand, a state appellate court must apply certain rules of state law (such as set forth in *Hodges*), Claims Eight and Nine should be rejected as non-cognizable. *Estelle*, 502 U.S. at 68; *see Johnson v. Acevedo*, 572 F.3d 398, 402 (7th Cir. 2009) ("A violation of state law is not the basis for federal collateral relief."); *see also Curtis v. Randolph*, No. 09 C 4751, 2010 WL 3937465, *8 (N.D. Ill. Oct. 5, 2010) (alleged misapplication of Illinois Post-Conviction Hearing Act not cognizable on federal habeas review).

### K. Claim Ten Is Non-Cognizable.

Claim Ten — that petitioner's sentence was excessive — is non-cognizable on federal habeas review.

Claim Ten is non-cognizable because it raises only an error of state law. Petitioner asserts that his sentence of a fifty-year term of imprisonment violated

"due process" and "equal protection," but cites no federal constitutional authority for this proposition, nor does he explain on what ground his sentence was violative of these constitutional protections. Pet. at 11. Instead, he merely argues that the mitigating factors presented at his sentencing hearing should have compelled the court to give him a shorter sentence. *Id*.; *see also* Exh. B at 26 (direct appeal brief, arguing that sentence was excessive under state law). Under the federal Constitution, "a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." *Chapman v. United States*, 500 U.S. 453, 465 (1991) (internal citations omitted). Petitioner makes no allegations that his sentence violates this principle; accordingly, petitioner's challenge to the length of prison term is a matter of state, and not federal constitutional, law. *Perruquet,* 390 F.3d at 511 ("errors of state law in and of themselves are not cognizable on habeas review") (citing *Estelle*, 502 U.S. at 67-68); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (claim presenting error in application of state sentencing rules not cognizable on federal habeas review).

## II.   This Court Should Not Issue A Certificate Of Appealability.

Petitioner is not entitled to a certificate of appealability (CA). A "district court must issue or deny a certificate of appealability when it enters a final judgment adverse to" a habeas petitioner. Rule 11 of the Rules Governing Section

2254 Cases in the United States District Courts.  To obtain a CA, petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Where the district court denies habeas relief on procedural grounds without reaching the merits of the petitioner's claim, a CA should issue only if the petitioner has shown both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

This Court should decline to issue a CA because, as set forth in this answer, petitioner has not made a substantial showing of the denial of a constitutional right; it is not debatable that his claims are procedurally defaulted, non-cognizable, or barred by § 2254(d).

## CONCLUSION

This Court should deny the instant habeas petition in its entirety and decline to issue a certificate of appealability. In the event that this Court determines that Claims One, Two, Three, Four, Six, or Seven are not defaulted, respondent requests an additional thirty days within which to respond to the merits of the claim or claims.

February 4, 2011                              Respectfully submitted,

                                             LISA MADIGAN
                                             Attorney General of Illinois

                              By:    /s/ Stephen M. Soltanzadeh
                                     STEPHEN M. SOLTANZADEH, Bar No. 6297668
                                     Assistant Attorney General
                                     100 West Randolph Street, 12th Floor
                                     Chicago, Illinois 60601-3128
                                     PHONE: (312) 814-5643
                                     FAX: (312) 814-2253
                                     EMAIL: ssoltanzadeh@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2011, I electronically filed the foregoing **Answer** with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the same to the following non-CM/ECF participant:

Darrell Fair
#B32994
Stateville Correctional Center
16830 South Broadway Street
P.O. Box 112
Joliet, Illinois 60434

/s/ Stephen M. Soltanzadeh
STEPHEN M. SOLTANZADEH, Bar #6297668
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-5643
FAX: (312) 814-2253
EMAIL: ssoltanzadeh@atg.state.il.us