IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* DARRELL FAIR, ) <br> ) <br> Petitioner ) <br> ) <br> v. ) <br> ) <br> MARCUS HARDY, Warden, Stateville ) <br> Correctional Center, ) <br> ) <br> Respondent. ) <br> ) | Civil Action No.: 10 C 7710 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Darrell Fair was driving around with two companions, Chris Thomas and Lamont Reaves,[1] when Reaves robbed two people at gunpoint, fatally shooting one. A jury found Fair guilty of first degree murder, rejecting his defense that, although he was present at the scene, he was not involved in the robbery. He was sentenced to 50 years' imprisonment. His direct appeal and postconviction proceedings in the Illinois state courts were unsuccessful. Now, he petitions *pro se* for a writ of *habeas corpus* under 28 U.S.C. § 2254.

### I. Background

The following facts are taken from the Illinois appellate court's decision on direct appeal. Ex. A. The factual findings of the last state court to reach the merits are presumed correct unless

---

[1] The name of Fair's accomplice appears in the record as both "Reeves" and "Reaves." The court uses "Reaves" because the Illinois Department of Corrections Inmate Search reveals a "Lamont Reaves" is serving a life sentence for murder, but no "Lamont Reeves" is incarcerated.

1

rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Gonzales v. Mize*, 565 F.3d 373, 384 (7th Cir. 2009). Fair does not challenge the factual findings.

One of the main issues in the state court proceedings concerned post-arrest statements Fair made to police detective Maverick Porter and assistant state's attorney ("ASA") Adrian Mebane and a handwritten account by the ASA of those statements. Fair admitted he, Thomas, and Reaves were driving around looking for someone to rob. Fair had obtained a gun from a friend, and they hid it under the hood of the car in case they were stopped by police. When they saw the victims, Chris Stubblefield and William Jones, Reaves retrieved the gun, snatched a chain off Jones' neck, pursued a fleeing Stubblefield, took his money, and shot him in the back. Reaves returned to the car, and they drove away.

Before trial, Fair moved to suppress the inculpatory statements. He argued he had not been properly *Mirandized*, his requests for a lawyer were ignored, police used physical abuse to overcome his refusal to answer questions, and his statement was the product of coercion after denial of medical treatment, food, and sleep. *See* Ex. R. But at a hearing, defense counsel withdrew the suppression motion, telling the court that he consulted Fair about the decision. Fair confirmed that he agreed with the decision to withdraw his suppression motion. At trial, Detective Porter testified about Fair's oral statements, ASA Mebane read Mebane's handwritten account to the jury and testified about its creation, and Mebane's handwritten statement was shown to the jury.

Defense counsel relied on irregularities surrounding the handwritten statement to attack the credibility of ASA Mebane and Detective Porter. In his opening statement, defense counsel emphasized that the handwritten statement was not written or signed by Fair and that a court

2

reporter was not present to record exactly what Fair said. Porter admitted on cross-examination that he was present while the ASA questioned Fair, but he was never asked to initial the statement. In his six years as a detective, this was the only case he could recall in which he did not initial changes made in a handwritten statement. Mebane testified that he printed Fair's name on the statement where Fair normally would have signed. He stated Fair refused to initial the changes or sign the statement. Defense counsel characterized Mebane's writing Fair's name on the signature line as fraud. He used these irregularities to argue Mebane and Porter were biased and the handwritten statement was unreliable. In closing, he characterized Mebane as an overly ambitious ASA who "mov[ed] up on the backs of people of the like of [Fair]" to become a trial attorney for the Department of Justice in Washington, D.C. Ex. A at 7.

Several other witnesses testified at trial. The surviving robbery victim, William Jones, testified that a man exiting a white Camaro came up to him and Stubblefield, put a gun to his forehead, snatched a chain from his neck, then removed money from Stubblefield's pockets and shot Stubblefield in the back. An eyewitness, Christopher Hill, testified that he saw a man, whom he later identified in a lineup as Reaves, exit a white Camaro and shoot Stubblefield in the back. Then, he said, the shooter got into the passenger side of the Camaro, where two unidentified people were waiting, and drove away. Another eyewitness, Nicole Murray, testified that she was standing outside the lounge with a friend when Fair approached them and tried to sell them liquor. She turned her back while her friend and Fair were talking and heard gunshots. Everyone started running; she did not see what Fair did. Detective Porter, in addition to testifying about Fair's post-arrest statements, explained how the investigation led him to Fair.

3

The eyewitness, Hill, led him to the shooter, Reaves. Reaves told him about Fair's involvement in the robbery.

After the jury found Fair guilty of first degree murder, he was sentenced to 50 years' imprisonment. The Illinois appellate court affirmed Fair's conviction and sentence. *See* Ex. A. The Illinois Supreme Court denied him leave to appeal. *See* Ex. F. Fair then filed a *pro se* postconviction petition, which the trial court summarily dismissed. *See* Ex. U. Fair was represented by counsel on appeal. The state appellate court upheld the dismissal of the postconviction petition, but the Illinois Supreme Court vacated the decision and remanded to the appellate court to reconsider its dismissal in light of an intervening case clarifying postconviction standards of review. *See* Exs. G, O. On remand, the state appellate court reaffirmed its denial of postconviction relief. *See* Ex. K. The Illinois Supreme Court denied Fair's petition for leave to appeal. *See* Ex. Q. More detail about the state court proceedings is provided below as necessary.

Fair now petitions for a writ of *habeas corpus* under 28 U.S.C. § 2254. His petition raises ten claims: (1) police used physical abuse and coercion to overcome repeated refusals to answer questions; (2) he was not properly *Mirandized* before giving a statement; (3) he was questioned even after requesting counsel; (4) his statement was coerced because he was denied medical treatment, food, and sleep for more than 30 hours; (5) trial counsel provided ineffective assistance for not pursuing a motion to suppress his statement; (6) allowing the written statement into evidence denied him a fair trial; (7) trial counsel was ineffective for not moving to quash his arrest; (8) the state appellate court failed to comply with the Illinois Supreme Court's supervisory order on remand in the postconviction proceedings; (9) the state appellate court used an incorrect

standard in evaluating his postconviction claim of ineffective assistance of counsel; and (10) the 50-year sentence for first degree murder was excessive and constituted an abuse of discretion.

## II. Analysis

### A. Noncognizable issues

Federal *habeas corpus* relief is available to a state prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It exists only to protect a state prisoner's federal rights. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A threshold issue, then, is whether the claims asserted in the petition raise a federal issue. *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Errors of state law are not cognizable on *habeas* review. *Hill v. Wilson*, 519 F.3d 366, 368–39 (7th Cir. 2008).

Three of Fair's claims are matters of state law and do not raise federal claims. Two claims take issue with the standard the state appellate court used to evaluate his *pro se* postconviction petition. In Illinois, a *pro se* postconviction petition may be dismissed by the trial court at the first level of review if it is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2). The Illinois Supreme Court interpreted this to mean the petition "has no arguable basis either in law or in fact." *People v. Hodges*, 912 N.E.2d 1204, 1212 (Ill. 2009). Fair argues the state appellate court erred by applying *Strickland v. Washington*, 466 U.S. 668 (1984), to his ineffective assistance claim instead of *Hodges* as directed by the Illinois Supreme Court. However, Fair misinterprets the remand order. *Strickland* provides the applicable substantive standard, and *Hodges* explains what a petitioner must show under state procedural laws to preserve a *Strickland* claim beyond the first level of review.

Fair also contends the state appellate court applied a stricter standard than *Hodges* allows. However, an error in applying state law standards of review is not an independent claim on *habeas* review. *See United States ex rel. Curtis v. Randolph*, No. 09 C 4751, 2010 WL 3937465, at *8 (N.D. Ill. Oct. 5, 2010) (St. Eve, J.) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). Federal courts are concerned with whether the state court reasonably applied substantive federal law, here, *Strickland*. Federal courts do not sit as courts of appeals over state postconviction process. *See Carter v. Ryker*, No. 10 C 3783, 2011 WL 589687, at *10 (N.D. Ill. Feb. 9, 2011) (Leinenweber, J.) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987). Fair must show that the postconviction decision on the merits contravened federal law. *See Samuel v. Frank*, 525 F.3d 566, 573–74 (7th Cir. 2008) (Rovner, J., concurring).

Fair also claims his 50-year sentence was excessive and constituted an abuse of discretion. He asserts the trial court failed to consider his mitigating evidence, denying him due process and equal protection. However, he does not raise a federal issue regarding the choice of sentence, which fell within the 20–60 year statutory range. *See* 730 ILCS 5/5-8-1(a)(1)(a) (West 1998). Once a person is validly convicted, "the court may impose[ ] whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth [or Fourteenth] Amendment." *Chapman v. United States*, 500 U.S. 453, 465 (1991) (citations omitted). Fair's disagreement with the weight the trial court assigned mitigating factors does not fall under either exception.

## B. Procedural Default

In addition to raising only federal issues in a § 2254 petition, a petitioner must also exhaust each issue in the state court proceedings. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts an issue by fairly presenting it at each level of state court review. *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1052 (2011). A petitioner is required to first present the state court with the law and facts underlying the claim. *Ward v. Jenkins*, 613 F.3d 692, 696–97 (7th Cir. 2010). If a petitioner did not assert the federal claim at each level and further state review is foreclosed, the issue is procedurally defaulted. *Johnson v. Pollard*, 559 F.3d 746, 751–52 (7th Cir. 2009). Alternatively, a fully exhausted issue may still be procedurally defaulted if the state court decided the issue on an adequate and independent state ground. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). A court may reach a procedurally defaulted issue only if the petitioner can show cause and prejudice for the default or establish a fundamental miscarriage of justice will result if the issue is not considered. *Gray v. Hardy*, 598 F.3d 324, 327–28 (7th Cir.), *cert. denied*, 131 S. Ct. 119 (2010).

Fair's first four claims about the manner in which his statement was obtained were not presented to the state court and are procedurally defaulted. In his § 2254 petition, Fair claims he was not properly *Mirandized*, his requests for an attorney were ignored, police used physical abuse to overcome his refusal to answer questions, and his statement was the product of coercion after denial of medical treatment, food, and sleep. On direct appeal, he attacked the admission of the written statement on evidentiary grounds and contended alternatively that his attorney was ineffective for withdrawing the suppression motion, which relied on the *Miranda* issue and the coercive acts raised in the § 2254 petition. Fair did not seek relief on the basis of an

unconstitutionally obtained statement. In his postconviction proceedings, he set forth the alleged circumstances of his questioning at the police station, but only as support for his ineffective assistance claim, not as an independent claim in its own right. A claim of ineffective assistance of counsel is independent from any errors on which the ineffectiveness is based. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Each issue must be presented as a separate claim to the state courts in order to exhaust state court remedies. *Id.* Fair raised constitutional claims regarding his statement only in the context of an ineffective assistance of counsel claim. Because Fair was represented by counsel at the appellate stages of review, he does not receive the benefit of a liberal construction of his state appellate briefs. *Byers v. Basinger*, 610 F.3d 980, 986 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1052 (2011). He failed to exhaust whether his statement was improperly obtained. Illinois does not allow successive postconviction petitions as of right, *see* 725 ILCS 5/122-1(f), so these issues are procedurally defaulted.

Fair's claim that admitting the written statement into evidence violated his right to a fair trial is procedurally defaulted because the state court decided the issue on an adequate and independent state ground. The state contests whether Fair even states a constitutional claim under the fact-pleading standards applicable to habeas petitions, see Rules Governing Section 2254 Cases 2(c), or whether he raised the issue as a constitutional one before the state courts. It is true that on direct appeal, he challenged the admissibility of the written statement on state law evidentiary grounds. However, one paragraph in his state appellate brief argued the admission of the statement denied him a fundamentally fair trial. Ex. B at 23. An evidentiary error may violate due process if it denied a fundamentally fair trial. *Brown v. Watters,* 599 F.3d 602, 616

(7th Cir.), *cert. denied* 131 S. Ct. 293 (2010). Assuming without deciding that Fair preserved the constitutional issue and sufficiently raises it now, the claim is still procedurally defaulted.

The state appellate court found on direct appeal that Fair waived any challenge to the admission of the written statement because he failed to object at trial or raise the issue in a post-trial motion. In Illinois, waiver based on a failure to object at trial is an adequate and independent state ground. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010), *cert. denied*, No. 10-9059 (U.S. Feb. 15, 2011). The state appellate court did not even apply plain error review, concluding Fair invited the error by relying on the written statement as part of his defense.

In his reply, Fair asserts ineffective assistance of trial counsel as cause for his default. Ineffective assistance of counsel may be cause to excuse a default. *Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010). However, as discussed below, Fair's claim of ineffective assistance of counsel fails and cannot excuse the default. Alternatively, Fair asserts that a refusal to consider a constitutional claim due to a procedural bar would result in a fundamental miscarriage of justice. But Fair must show more than a constitutional claim; he must show he is actually innocent. *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). This he does not claim.

## C. Merits decisions

Fair raises a claim of ineffective assistance of counsel, citing failure to pursue the motion to suppress his statement and failure to move to quash his arrest. No procedural bar precludes consideration of these claims on the merits; Fair challenged his attorney's effectiveness regarding the suppression motion through one full round of review on direct review and the motion to quash in postconviction proceedings. Although this court may reach the merits, it does not

conduct an independent review of counsel's effectiveness. Instead, § 2254(d) directs a federal court to determine whether the state court decision on the merits contravened or unreasonably applied Supreme Court precedent or was based on an unreasonable determination of the facts based on the evidence before it. 28 U.S.C. § 2254(d); *Suh v. Pierce*, 630 F.3d 685, 690 (7th Cir. 2011). Fair must show his counsel's performance fell below an objective standard of reasonableness and inadequate performance prejudiced him; prejudice requires a reasonable probability that the result would have been different but for poor performance. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984). In the *habeas* context, Fair must further establish that the state court's reasons for rejecting his ineffective assistance claim were not only incorrect but also unreasonably incorrect. *Ebert v. Gaetz*, 610 F.3d 404, 411–12 (7th Cir.), *cert. denied*, 131 S. Ct. 578 (2010).

On direct appeal, Fair focused mainly on counsel's failure to object to the admission of the written statement as evidence of ineffectiveness. But he also challenged, briefly, the decision to withdraw the motion to suppress all oral and written statements on the basis of an allegedly unconstitutional interrogation. The motion cited violations of *Miranda*, the right to silence, and the right to an attorney, and detailed several coercive acts. The motion did not raise evidentiary objections to the written statement. The appellate brief also relied on Fair's statements at sentencing that his confession was the product of physical and mental coercion. The state appellate court concluded defense counsel was not ineffective under *Strickland* for withdrawing the motion. Fair agreed with defense counsel's decision, and at trial, defense counsel relied on the handwritten statement as part of his trial strategy. Defense counsel questioned the statement's reliability and used it to attack the ASA and the detective's credibility. The state

appellate court concluded the decision not to challenge Fair's statement was "clearly a matter of trial strategy that defendant concurred with and not incompetence." Ex. A at 13.

On postconviction appeal, Fair again challenged his trial attorney's effectiveness for not litigating the suppression motion, this time setting forth a full account of the alleged circumstances of the questioning—details not available in the trial record. The state appellate court determined this issue was barred by *res judicata*; Fair challenged the withdrawal of the suppression motion on direct appeal.[2] Because the state court relied on *res judicata*, this court reviews the resolution of the issue from the direct appeal. *Sutherland v. Gaetz*, 581 F.3d 614, 616 (7th Cir. 2009), *cert. denied* 130 S. Ct. 2352 (2010).

In his *habeas* petition, Fair relies on the asserted constitutional violations that occurred during his interrogation, seemingly arguing that his counsel was ineffective for not moving to suppress the statement because a motion would have succeeded. However, this argument does not address the state court's reasons for rejecting his claim. The state court did not decide whether a suppression motion would ultimately have been successful. Instead, the state court concluded defense counsel pursued a reasonable trial strategy. Fair does not challenge the determination that he and his trial counsel made a strategic choice not to contest the statement, nor does he contend his strategic choice was unreasonable. Indeed, it is not unreasonable to conclude that the irregularities identified in the statement provided a reasonable opportunity to discredit the ASA and the detective.

---

[2] Fair does not argue his appellate attorney was ineffective on direct appeal for raising the issue.

11

As to the arrest, Fair argued in postconviction proceedings that his trial attorney was ineffective for not moving to quash the arrest. He asserted that he was arrested without a warrant and in an unreasonable manner; he opened his door for police only after they cut his cable connection, threatened to shoot him through the door, and nearly knocked the door down. The state appellate court determined Fair could not meet the prejudice prong of *Strickland* because he established neither a likelihood of success on the merits nor that the outcome would have been different if the motion were successful. Even if a quashed arrest would have led to suppression of Fair's statement as the fruits of that arrest, the state appellate court determined other evidence of his guilt was "significant and compelling." Ex. K at 8–9. Specifically, the state court cited to "testimony of two eyewitnesses who identified defendant's car at the scene of the crime; one eyewitness who placed defendant at the scene of the crime; and a statement by defendant's accomplice to police implicating defendant . . . ." Ex. K at 2.

In his *habeas* petition, Fair reiterates the alleged circumstances of his arrest, focusing on the constitutionality of his arrest. The state appellate court, however, never ruled on the legality of the arrest. Instead, it found Fair was not prejudiced. Fair must show the state court unreasonably concluded that other evidence besides his statement supported his conviction. Fair contends that although the other evidence the state court cited placed him at the scene of the crime, only Detective Porter's testimony supported a finding that he intended to participate in the robbery. Fair asserts he has reason to doubt Porter's credibility: Porter was a defendant in a civil suit alleging police officers withheld exculpatory evidence in a murder prosecution that ended in acquittal. *See Mosley v. City of Chicago*, 614 F.3d 391 (7th Cir. 2010). In that case, summary judgment was granted to the police officers and upheld on appeal. *Id.* Unproven allegations in a

12

separate case are insufficient to cast doubt on Porter's conduct in this case. Fair presents nothing to suggest Porter was lying during his testimony.[3]

### III. Certificate of Appealability

The court declines to issue a certificate of appealability. Fair has not made a substantial showing of the denial of a constitutional right, nor would reasonable jurists differ on whether the procedural rulings were correct. *See* 28 U.S.C. § 2253(c)(1); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In his petition, Fair fails to address the state court's conclusions on the merits of his claims, and nothing suggests the procedural rulings were incorrect.

### IV. Conclusion

For the foregoing reasons, Fair's petition for a writ of *habeas corpus* is denied. No certificate of appealability is issued.

---

[3] Fair challenges Detective Porter's statement only on the basis of reliability. He does not argue that Porter's testimony that Reaves implicated him might raise hearsay or Confrontation Clause problems. *See, e.g., Jones v. Basinger*, No. 09-2577, 2011 WL 1184170, at *14–17 (7th Cir. Mar. 31, 2011). However, the state appellate court relied on a different ground in its first order, before the Illinois Supreme Court ordered it to reconsider its decision. The state court first determined Fair could not show prejudice because if the arrest were quashed, the statements would not be suppressed; an improper, warrantless arrest at an arrestee's home otherwise supported by probable cause does not lead to suppression of statements made at the police station. This is consistent with *New York v. Harris*, 495 U.S. 14, 21 (1990) ("[W]here the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home [without a warrant, consent, or exigent circumstances]").

ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge

April 18, 2011